Joseph W. Zima Unified School District No. 501 624 W. 24th Street Topeka, Kansas 66611
Dear Mr. Zima:
As attorney for unified school district no. 501 (U.S.D. #501), you request our opinion regarding campaign activities in which a unified school district may engage. Specifically, you ask:
 "1. Does USD 501 have a legal duty to provide information to school district voters relevant to the local option budget election to be held on April 6, 1993?
 "2. Can the USD 501 Board of Education and staff advocate a yes vote in the April 6, 1993, local option budget election — using public funds? Using private funds? Without using any funds?
 "3. Can USD 501 prepare and distribute informational documents that do not advocate a position on how to vote — using public funds? Using private funds?
 "4. Can USD 501 prepare and pay for media advertisements that advocate a yes vote — with public funds? With private funds?
 "5. Can USD 501 staff expend time coordinating private efforts to advocate a yes vote and reviewing private parties' materials for accuracy — on duty? Off duty?
 "6. Can Board of Education members make public appearances and speeches — explaining the school district's position on the need for a local option budget? Advocating a yes vote?
 "7. Can school district staff make public appearances and speeches — explaining the school district's position on the need for a local option budget? Advocating a yes vote?"
The board of education for U.S.D. #501 has adopted a resolution authorizing a local option budget. A petition in opposition to the local option budget was circulated and the requisite number of signatures collected. Upon certification of the validity of the petition, the board of education has called for an election on the question of whether adoption of the local option budget shall be authorized. The election is to be conducted April 6, 1993.
Pursuant to section 5 of article 6 of the constitution of the state of Kansas, local public schools under the supervision of the state board of education are to be maintained, developed, and operated by locally elected boards of education. The duties and powers of the local boards of education are generally set forth in chapter 72 of the Kansas Statutes Annotated. Following its authority as set forth in K.S.A. 72-6433, a local board of education may adopt a local option budget by passing a resolution authorizing the adoption of the local option budget. In subsection (b)(1) of the statute, it is provided:
 "If no petition as specified above is filed in accordance with the provisions of the resolution, the board may adopt a local option budget. If a petition is filed as provided in the resolution, the board may notify the county election officer of the date of an election to be held to submit the question of whether adoption of a local option budget shall be authorized." K.S.A. 72-6433.
There is no provision within K.S.A. 72-6433 which expressly authorizes or prohibits the board of education from participating in or undertaking campaigns regarding adoption of the local option budget. Likewise, we are unaware of any statutory provision contained in chapter 72 of the Kansas Statutes Annotated that expressly authorizes or prohibits boards of education from participating in or undertaking campaigns.
The state board of education has consistently informed persons that a school district has the obligation to "educate" the electorate regarding issues to be voted on by the electors but may not "advocate" a position regarding that issue. See Phillips v. Maurer, 67 N.Y.2d 672 (1986). Quoting Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,233 Kan. 801, 810 (1983), the court in Boatright v. Kansas RacingComm'n, 251 Kan. 240 (1992) states:
 "The ruling of an administrative agency on questions of law, while not as conclusive as its findings of facts, is none the less persuasive and given weight, and may carry with it a strong presumption of correctness, especially if the agency is one of special competence and experience." Boatright, 251 Kan. at 246.
Although the courts of Kansas have not expressly addressed the authority of a school district to participate in or undertake campaigns, it appears that the court has recognized that a school district, as a public body, is under an obligation to educate the electorate regarding an issue subject to election. See Kimsey v. Board of Education, 211 Kan. 618,624 (1973) ("There can be no quarrel with this general proposition — the elector is entitled to know what his money is going to be used for when he votes. . . . [W]e noted that this test is applied to all bond propositions, regardless of the authorizing statute or the type of issuing municipality."); West v. Unified School District, 204 Kan. 29 (1969) (superintendent of the school district mailed printed brochures containing information about the contemplated building, its location, cost, floor plan, capacity, and the fact that grades 9 to 12 would attend; authority to do so not raised as an issue before the court);Kansas Electric Power Co. v. City of Eureka, 142 Kan. 117, 120 (1935) ("[P]ersons who happen to hold city offices in their private capacity as electors are as free as other people to advocate their opinions. But as public officials they should maintain a reasonable semblance of neutrality.")
School districts and other subdivisions of the state have only such powers as are conferred upon them by statute, specifically or by clear implication, and any reasonable doubt as to the existence of such power should be resolved against its existence. Hobart v. U.S.D. No. 309,230 Kan. 375, 383 (1981). It is our opinion that school districts have an obligation to educate the electorate regarding school district issues to be voted on by the electors. However, the school district does not have the authority to advocate a position on issues to be voted on by electors of the school district. Officers and staff of the school district must maintain a semblance of neutrality.
You also ask whether the authority of a school district to participate in or undertake campaigns is altered should funds donated by private persons or organizations be used. You indicate that private individuals and organizations have contacted the school district, expressing a desire to make donations to the school district with the proviso that the funds be used to advocate a position regarding an issue to be voted on by the electors of the school district.
It is perfectly proper for a school board to receive contributions from private sources toward the expenses incident to an exercise of a duty proper under the law. 68 Am.Jur.2d Schools sec. 87 (1973). However, such funds may not be used in such a manner as to expand the powers of the school board beyond those authorized by law. The fact that the funds are contributions from private sources does not expand the authority or power of the school district. As noted above, we have been unable to locate authority for a school district or its officials to participate in or undertake campaigns. Therefore, receipt of donations from private individuals or organizations does not permit a school district to participate in or undertake campaigns merely because the donations were submitted with a proviso that the funds be used for an activity which is not otherwise authorized by law.
You also advocate that should it be determined that the authority for a school district to participate in or undertake campaigns does not exist in chapter 72 of the Kansas Statutes Annotated, such authority may reasonably be implied from K.S.A. 1992 Supp. 25-901.
K.S.A. 1992 Supp. 25-901 provides in part:
 "Every committee, club, organization, municipality or association designed to promote or engaged in promoting
the success or defeat of any party or the election or defeat of any candidate or candidates for any city of the second and third class, unified school district, except unified school districts having 35,000 or more pupils regularly enrolled in the preceding school year[,] any community college or township office, or the adoption or defeat of any question submitted at any city, unified school district, community college, township or county election, shall have a treasurer, and shall cause to be kept a detailed account of all moneys or property or other thing of value received by it, and of the manner in which the same shall be expended. . . ." (Emphasis added.)
You advocate that the term municipality includes a unified school district. Under your analogy, the legislature has required unified school districts engaged in the adoption or defeat of any question submitted at any unified school district election to appoint a treasurer and file the required reports, thereby authorizing school districts to participate in or undertake campaigns.
The interpretation of a statute is a matter of law and it is the function of the court to interpret the statute to give it the effect intended by the legislature. Todd v. Kelly, 251 Kan. 512, 515 (1992). When construing a statute a court must give words in common usage their natural and ordinary meaning. House v. American Family Mutual Ins. Co.,251 Kan. 419, 423 (1992). Words and phrases are to be construed according to the context and the approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law are to be construed according to their peculiar and appropriate meanings. K.S.A. 1992 Supp.77-201 Second. All statutes are presumed to be enacted with full knowledge of the existing condition of the law and with reference to it.Early Detection Center, Inc. v. Wilson, 248 Kan. 869, 874 (1991).
The term municipality was added to the statute in L. 1969, ch. 188, sec. 1. A definition of municipality is not included in K.S.A. 1992 Supp. 25-901. A number of other statutes using the term do provide a definition for municipality. A school district is a municipality in the following: K.S.A. 10-101 (bonds); 10-128 (bonds); 10-1101 (cash-basis law); 10-1201 (revenue bonds); 72-8204a (". . . for the purpose of K.S.A. 79-2925 to 79-2968. . . ."; budgets); 75-1117 (municipal accounting board); 75-3038 (federal tax withholding); and K.S.A. 1992 Supp. 75-6102 (tort claims act). However, a school district is not a municipality in the following: K.S.A. 12-825j (public utilities); 12-1218 (libraries); 12-1679 (merchant or security police); 12-2701 (water distribution system); 17-2339 (housing law); 17-4754 (urban renewal); 17-4760 (urban renewal); 36-501 (food service and lodging); 65-6112 (emergency medical services); 68-589 (county and township roads); and 68-2101 (junkyard and salvage control). The term municipality is neither a technical word or phrase nor is it a word or phrase that has acquired a peculiar and appropriate meaning in law. It is assumed that at the time the term municipality was added to the statute, the legislature was aware of the lack of authority of a school district to participate in or undertake campaigns. The legislature has not, through this enactment, conferred power upon school districts, either expressly or by clear implication, to participate in or undertake campaigns. The legislature did not include school districts within the term municipality as that term is used in K.S.A. 1992 Supp. 25-901.
It has been recognized by the courts that the political activities of public employees and officials may be restricted provided a significant governmental interest is served by the restriction. The courts have recognized a legitimate state interest in prohibiting political activity when such prohibition prevents political coercion of the employees of the governmental entity, ensures the independence of the governmental entity, or contributes to the impartiality of public servants. SeeUnited States Civil Service Comm'n v. Nat'l Ass'n of Letter Carriers,413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); Washman v. City ofDallas, 704 F.2d 160 (C.A. 5 Tex. 1983), reh. denied, 710 F.2d 837 (C.A.5 Tex. 1983), cert. denied, 464 U.S. 1012, 104 S.Ct. 537, 78 L.Ed.2d 717
(1983); Morial v. Judiciary Comm'n of State of Louisiana, 565 F.2d 295
(C.A. 5 La. 1977), cert. denied, 435 U.S. 1013, 98 S.Ct. 1887,56 L.Ed.2d 395 (1978); Magill v. Lynch, 560 F.2d 22 (C.A. 1 R.I. 1977), cert. denied, 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978). The Kansas legislature has exercised this authority in adoption of: K.S.A. 1992 Supp. 44-714 (restricts political activities of individuals engaged in the administration of employment security law, Kansas department of human resources; however, see State, ex rel v. Wolgast, No. 86-CV-672 [Shawnee County District Court, December 29, 1986]; Attorney General Opinion No. 90-109); K.S.A. 74-2113 (restricts political activities of members of the Kansas highway patrol); and K.S.A. 1992 Supp. 75-2953
(restricts political activities of state employees). A similar provision regarding employees of school districts has not been enacted. Therefore, officers and staff of the school district may, in their private capacity, advocate a position on an issue subject to election by voters of the school district.
In review, a unified school district is under an obligation to educate the electorate regarding issues pertaining to schools which are to be voted on by the electorate. However, officials of the school district must maintain a semblance of neutrality, and information provided by the school district may not advocate a particular stance on the issue. Donations from private sources do not expand the authority or power of a school district to participate in or undertake campaigns. However, officers and staff of the school district may, in their private capacity, advocate a position on an issue subject to election by voters of the school district.
Very truly yours,
 ROBERT T. STEPHAN Kansas Attorney General
 Richard D. Smith Assistant Attorney General
RTS:JLM:RDS:jm